[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15446
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2008
THOMAS K. KAHN
CLERK

BIA No. A95-665-523

QIONG QIONG LIU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 27, 2008)**

Before BIRCH, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

Qiong-Qiong Liu, a native and citizen of China, petitions this Court to review

the final order of the Board of Immigration Appeals ("BIA") which affirmed the

immigration judge's ("IJ") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). In her petition for review, Liu argues that the BIA erred by adopting and affirming the IJ's denial of asylum, which was based on an adverse credibility finding as to Liu's testimony.[1] After careful review, we deny the petition for review.

This Court "review[s] only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. In this case, the BIA did not expressly adopt the IJ's entire opinion, but the BIA's opinion suggests that it accepted much of the IJ's reasoning. Thus, we will review the BIA's decision and the IJ's decision to the extent the BIA adopted the IJ's reasoning.

We review the BIA's and IJ's legal determinations de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). Factual determinations, however, are reviewed under the substantial evidence test, which requires that we

---

[1]Because we find that Liu has not satisfied her burden for asylum, we do not consider whether she satisfied the higher standards for withholding of removal under the INA or CAT relief. See Forgue v. Att'y Gen., 401 F.3d 1282, 1288 n. 4 (11th Cir. 2005).

"view the record in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  We will affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  D-Muhumed, 388 F.3d at 818  (quotation omitted).  Put another way, we will reverse a finding of fact only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal.  See Adefemi, 386 F.3d at 1027.  The "substantial evidence" standard also applies to credibility determinations and we may not substitute our judgment for that of the BIA with respect to such findings.  D-Muhumed, 388 F.3d at 818.

The relevant facts are these.  On February 26, 2004, Liu attempted to enter the United States at Los Angeles International Airport ("LAX"), where she used a false name and a Portuguese passport and identification card.  She was detained at LAX and, through a Mandarin Chinese interpreter, was questioned by an immigration officer.  She admitted to purchasing the false passport on the street in China, and asserted that she was in fear of returning to China due to her membership in the Catholic Church, which she said she joined one year before her attempted entry into this country.  She stated: "when I was at an event for the church, the Chinese government came out and arrested people, but I got away."  She said that the Catholic

3

Church was illegal in China. She further stated that she had come to the United States "for tour."

On September 15, 2004, Liu filed her application for asylum. In support of asylum, she said that her entire family was Catholic and had attended underground religious services conducted in the basement of her parents' house. In her asylum application, she also stated that she and her parents had been arrested in November and December of 2003 and that when she refused to name other members of the church, she was slapped, pushed to the ground, and kicked. She eventually was released when her uncle paid a fine, but she remained under house arrest. She eventually left the country illegally, for the purpose of practicing her religion. She acknowledged that, en route to the United States, she had traveled through South Korea but had not applied for asylum there. Her parents and brother remain in China.

In addition to her asylum application and interview statement at LAX, at her hearing before the IJ, Liu presented a copy of her birth certificate, a letter from a church in Florida stating that she was a member of the parish, and the birth certificate of her son, who was born in the United States in 2005. The IJ also considered the U.S. Department of State 2004 China Country Report on Human Rights Practices ("Country Report"). Liu also testified in support of her asylum application.

4

The IJ denied Liu's asylum application. First, the IJ concluded that Liu had not satisfied her burden to demonstrate persecution, rather than lawful prosecution, or arrest, for attending an underground church, and had failed to provide corroboration for any of the events she described in her testimony. The IJ also found that Liu's testimony was not credible for the following reasons:(1) Liu testified that her sister was arrested with her parents, but had failed to mention her sister's arrest prior to the hearing; (2) during her interview at LAX, she claimed she was a student, had never been arrested, and had come to the United States "for tour," statements that were directly contradicted by her testimony before the IJ; (3) she previously stated either that she had gotten away when others were arrested or that she was arrested at a church event, but during her testimony, she said she was arrested at school; and (4) Liu was unable to recognize any of the sacraments of the Catholic Church, other than baptism, and was unable to elaborate on anything about the Catholic religion, other than saying she was involved in the study of the Bible. Finally, the IJ found that Liu's belief that the Catholic Church is illegal in China was completely erroneous since, according to the Country Report, the Chinese government recognizes five religions, including Catholicism.

On appeal, the BIA affirmed the IJ's denial of relief. The BIA specified three material discrepancies and inconsistencies, in support of its decision to affirm the IJ's

adverse credibility finding: (1) Liu's testimony about her sister's arrest, which had not previously been mentioned; (2) during her LAX statement, Liu denied ever being arrested, but testified that she was arrested for participating in an underground church; and (3) during her LAX statement, Liu said that she "got away" when the Chinese police arrested others for participating in a church event, but then testified that she had been arrested and detained for nine days and beaten. This petition for review followed.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Secretary of Homeland Security or the Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is any person who is unwilling to return to her home country or to avail herself of that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ." 8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284; 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" of future

6

persecution. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). A showing of past persecution creates a presumption of a "well-founded fear," subject to rebuttal by the government. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). If she cannot show past persecution, then a petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Al Najjar, 257 F.3d at 1289. The subjective component can be established "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation omitted).

Liu challenges the IJ's adverse credibility finding. We have required that an IJ must make "clean" credibility determinations. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (holding that an IJ's statement that applicant's testimony was "extremely inconsistent and [made] absolutely no sense whatsoever" was not a clean credibility finding but a comment on the sufficiency of the evidence). This means that the IJ, or BIA, must provide "specific, cogent reasons" for such a finding. Forgue, 401 F.3d at 1287. "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Ruiz, 440 F.3d at 1255. If credible, an alien's

testimony may be sufficient, without corroboration, to sustain her burden of proof in establishing her eligibility for relief from removal. Forgue, 401 F.3d at 1287. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. However, if an applicant produces evidence other than her testimony, "it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." Id. "The weaker an applicant's testimony . . . the greater the need for corroborative evidence." Yang, 418 F.3d at 1201.

In the instant case, the BIA and IJ offered specific, cogent reasons for their adverse credibility findings. Moreover, substantial evidence in the record supports those findings. Liu provided little, if any, corroborative evidence and relied almost exclusively on her testimony to support her claim for asylum. Because the BIA and IJ found Liu's testimony not credible and she provided little corroborative evidence, Liu failed to meet her burden for establishing past persecution or a well-founded fear of persecution based on her religion. Accordingly, we must deny the petition for review.

**PETITION DENIED.**